IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF NEW MEXICO

MARY AGNES MARTINEZ,

       Plaintiff,

vs.                               No. CIV. 00-800 MV/LFG

**NEW MEXICO DEPARTMENT
OF PUBLIC SAFETY and PERRY BOYD,
a New Mexico State Police Officer,**

       **Defendants.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on the defendants' motion for summary judgment **[Doc. 18].** The Court having considered the motion, briefs, relevant law, and being otherwise fully informed, finds that the motion is well taken in part and will be **GRANTED IN PART** and **DENIED IN PART**, as explained below.

## BACKGROUND

The following facts are set forth in the light most favorable to plaintiff Mary Martinez, the nonmoving party. Several important facts are disputed by the defendants.

On April 29, 1998, Martinez was traveling in her car from Santa Fe to Albuquerque along Interstate 25. She had a speaking engagement in Albuquerque that day and wanted to arrive at the engagement early. According to defendant Perry Boyd, a New Mexico State Police Officer, Martinez was exceeding the 75 m.p.h. speed limit when she passed his patrol car, a black-and-white state police vehicle. Boyd pursued Martinez's car. Although Martinez does not remember

1

seeing Boyd's emergency lights, she realized that his car was pursuing her and thought it might be a police vehicle. Martinez pulled over to the shoulder, and Boyd stopped his car behind hers.

Boyd approached Martinez's car from the passenger side. Martinez lowered her passenger side window. Boyd was dressed in a black New Mexico Police uniform, with a badge and a name tag pinned to his shirt. Although Martinez could not understand what Boyd said, she handed him her registration and insurance through the car window. She told Boyd that she needed to look for her license in her bag and that her license had been mutilated. Martinez also told Boyd her correct date of birth and social security number.

Boyd returned to his patrol car. He reported the date of birth and social security number to his dispatcher. The dispatcher told Boyd that there was an arrest warrant for failure to appear for a "Mary Martinez" with the same date of birth. Boyd asked for a physical description so that he could positively identify Martinez as the person for whom the warrant had been issued. Martinez is middle-aged and weighs 280 pounds.

Boyd again approached Martinez's car on the passenger side. He asked Martinez for a form of identification. Martinez handed Boyd a New Mexico driver's license. The license had been altered, with portions of the license number and social security number interchanged and inverted, a beard and mustache drawn on Martinez's face, and devil horns drawn on her head. Martinez told Boyd that children at her school had altered the license. Boyd returned to his patrol car with the license. He read the information on the altered license to the dispatcher and confirmed that Martinez was the subject of the arrest warrant.

Boyd returned to Martinez's car. He told Martinez that there was a warrant for her arrest and that she would have to accompany him to the patrol car. Martinez did not comply. She had

2

earlier seen news reports about a man impersonating a police officer. Believing from Boyd's gum-chewing and general demeanor that he might be an imposter, Martinez asked him for identification. The engine of Martinez's car was still running, but in "park." As she took her foot off the brake, the car adjusted its position. Boyd reached in the car, unlocked the door, and took the key out of the ignition. He again asked Martinez to get out of the car. After repeating her request for identification, which Boyd refused to provide, Martinez got out. She was still uncertain whether Boyd was a police officer. She walked in front of Boyd to the shoulder of the road and then back to his patrol car. Martinez continued to ask Boyd for identification, or to use her cell phone to call another officer to verify who Boyd was. Boyd told Martinez he was placing her under arrest and handcuffed her.

Martinez continued to plead with Boyd to show identification or to call a second officer. She also said that she had "a lot of confidential information" in her car and wanted to know what would happen to it. She did not, however, physically resist. Boyd warned Martinez, "If you don't get in the car right now, I'm going to mace you." Martinez responded, "Please don't do that because I'm allergic to pepper." Boyd said, "Watch me," sprayed mace on Martinez's face, and shoved her into the patrol car. The mace caused an immediate burning sensation around Martinez's face and eyes.

Because he was not permitted to leave Martinez's car unattended on the shoulder, Boyd waited until another officer arrived on the scene. He then drove to the police station. Boyd handcuffed Martinez to a bar in the holding area while he got a female officer to book Martinez. A female officer took Martinez to a cleaning area where Martinez washed the mace off of her face. The mace caused a burn on the side of Martinez's face, which lasted for about one week.

After discussing this incident with his sergeant, Boyd charged Martinez with resisting or obstructing an officer, in violation of N.M. St. Ann. § 30-22-1(D), and altering, forging, or making a fictitious driver's license, in violation of N.M. St. Ann. § 66-5-18(B).  The Magistrate Court dismissed the charges on May 12, 1998.

## STANDARD OF REVIEW

Summary judgment is an integral part of the Federal Rules of Civil Procedure, which are intended to "secure the just, speedy and inexpensive determination of every action."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).  Under Rule 56(c), summary judgment is appropriate when the court, viewing the record in the light most favorable to the non-moving party, determines that "there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law."  *Thrasher v. B&B Chemical Co.*, 2 F.3d 995, 996 (10th Cir. 1993) (citations omitted).  The movant bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case."  *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (citation omitted).  Once the movant meets this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Celotex*, 477 U.S. at 324.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

## ANALYSIS

4

Martinez listed five claims in her complaint:  (1) excessive force, (2) charging without probable cause, (3) arrest without probable cause, (4) battery, and (5) malicious abuse of process. Counts 1, 2, and 3 are claims brought under the Fourth Amendment against defendant Boyd. Counts 4 and 5 are claims brought under the New Mexico Tort Claims Act against both Boyd and the New Mexico Department of Public Safety.  Defendants move for summary judgment on all counts.  The Court will consider each count in turn.

## I.   EXCESSIVE FORCE

The Supreme Court has held that in analyzing the defense of qualified immunity under 42 U.S.C. § 1983, courts must decide first whether the plaintiff has stated a proper claim for a violation of a right, then whether the right at issue was "clearly established" at the time the alleged violation occurred.  *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *Conn v. Gabbert*, 526 U.S. 286, 290 (1999); *accord Currier v. Doran*, ___ F.3d ___, 2001 WL 202045, at *10 (10th Cir. Mar 01, 2001) (citations omitted).  Accordingly, the Court will first address the merits of Martinez's excessive force claim, then turn to Boyd's assertion of qualified immunity.

### A.   Merits

This Court evaluates the use of force to effect an arrest under the "objective reasonableness" test of the Fourth Amendment.  *See Graham v. Connor*, 490 U.S. 386, 395-96 (1994).  The reasonableness of the force used is determined by "careful[ly] balancing . . . 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)).  This determination escapes "mechanical application" and "requires careful attention to the facts and circumstances of each particular case." *Id.*; *see also Quezada v. County*

*of Bernalillo*, 944 F.2d 710, 715 (10th Cir. 1991) ("[W]hether the police used excessive force in a § 1983 case has always been seen as a factual inquiry best answered by the fact finder.") (citations omitted). Furthermore, as the Tenth Circuit has explained:

> We judge the reasonableness of the force used not with the "20/20 vision of hindsight" or from the serenity of chambers but from the perspective of the officer on the scene, allowing for the split-second nature of most law enforcement decisions. From that vantage point, we pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."

*Pride v. Does*, 997 F.2d 712, 716-17 (10th Cir. 1993) (citations omitted).

Boyd clearly had grounds to arrest Martinez. The dispatcher informed him of the arrest warrant for failure to appear, and Boyd took care to confirm that Martinez was the actual subject of that warrant. Boyd also had first-hand knowledge of Martinez's altered license. He did not, however, know of any prior disruptive or violent conduct by Martinez that would have warranted extraordinary security precautions.

Crediting her version of the facts, as the Court must at this stage of the proceedings, Martinez posed only a limited threat to Boyd's safety. Martinez admits that, due to her uncertainty about Boyd's identity, she did not follow all of his directions. Although she handed him her registration and insurance through the car window, she initially refused to get out of her car after Boyd told her about the warrant for her arrest. Eventually, after Boyd reached in and grabbed her keys, Martinez got out and walked to the patrol car. She submitted to handcuffing, but then refused to get in the patrol car. During this time she repeatedly asked Boyd to show identification or call a second officer. The Court recognizes that an officer's safety may be

6

endangered when an arrestee does not fully cooperate during a vehicle stop along an interstate highway.  Nevertheless, the danger that Martinez – a 280-pound, middle-aged woman – posed while handcuffed was relatively minimal.  Boyd himself testified in his deposition that he was not concerned about his physical safety during his encounter with Martinez.

The extent and nature of Martinez's resistence is critical to the Fourth Amendment analysis.  She did not attempt to evade arrest by flight.[1]  She submitted to handcuffs.  Martinez's resistance was verbal, not physical.  While defendants contend that Martinez engaged in an "exhausting and seemingly endless string of stalling, questions, and diversions" to avoid getting into the patrol car, *Defendants' Memorandum in Support of the Motion for Summary Judgment*, at 12-13, the facts show that Martinez's main concern was to see Boyd's identification to confirm that he actually was a police officer.[2]  Defendants argue that at the time Martinez was in her car, he was unable to walk back to his car to retrieve his picture identification (his "commission card").  By the time he applied the mace, however, Martinez was standing by the patrol car in handcuffs.  Boyd clearly could have shown his picture identification to Martinez at that time,

---

[1] According to her testimony, Martinez's car, already in "park," had simply settled when she took her foot off the brake.  To the extent that Boyd had interpreted the car's movement as an attempt by Martinez to flee, he had neutralized that possibility by removing Martinez's car keys.  At the time he applied the mace, Martinez, handcuffed next to the patrol car, presented little to no risk of flight.

[2] Defendants argue that it was irrational for Martinez to ask for identification as he was dressed in a state police uniform, with a badge and name tag, and was driving a marked state police vehicle.  The key inquiry for purposes of the Fourth Amendment, however, is the objective reasonableness of Boyd's conduct, not Martinez's.  While the jury may consider the facts surrounding Martinez's repeated requests for identification in evaluating the reasonableness of Boyd's use of force, the Court cannot conclude as a matter of law that a citizen's non-physical resistance based on her expressed doubt about an uniformed officer's identity is itself sufficient to justify the application of mace.

thereby alleviating her expressed fears about his identity. A reasonable jury could conclude that Boyd's decision to mace Martinez instead was objectively unreasonable.

In their brief defendants rely primarily on *Thompson v. City of Kansas City*, 79 F.3d 1156, 1996 WL 112104 (10th Cir. Mar. 13, 1996) (unpublished opinion). Notwithstanding the fact that unpublished opinions by the Tenth Circuit have no precedential effect, the facts in *Thompson* are readily distinguishable from the facts at issue here. In *Thompson* police officers attempted to arrest the driver of a car involved in an accident who was standing on a bridge with a can of beer in his hand. The driver "resisted and attempted to punch and kick the officers." 1996 WL 112104, at **1. One officer struck the driver on the leg with a baton, and another officer attempted to spray the driver with pepper spray. *Id.* The court held that the officers' actions were objectively reasonable largely because they did not use force until the driver physically resisted. *Id.* at **5. Here, by contrast, the evidence supports a finding that Boyd maced Martinez while handcuffed and despite her lack of physical resistence.

It is worth reiterating that for purposes of summary judgment this Court views the facts in the light most favorable to Martinez, that Martinez's account of the incident is disputed by defendants, and that at trial the evidence may show that Officer Body acted entirely reasonably in the circumstances. For present purposes, however, the Court finds that Martinez has stated a claim for violation of her Fourth Amendment rights.

### B. Qualified Immunity

Having concluded that Martinez has stated a proper Fourth Amendment claim for excessive force, the Court next considers whether Boyd is entitled to qualified immunity. Under this doctrine, government officials sued for damages for injuries arising out the performance of

their discretionary functions must be "shown to have violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Conn v. Gabbert*, 526 U.S. at 290 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  The Tenth Circuit has observed that "in excessive force claims asserted under the Fourth Amendment, the qualified immunity question is usually answered in the Fourth Amendment inquiry." *Dixon v. Richer*, 922 F.2d 1456, 1463 (10th Cir. 1991).

> This is because, in the excessive force context, the Fourth Amendment inquiry asks directly whether the police officer reasonably could have believed that the force was necessary under the circumstances.  Since we have already held that, under the [plaintiffs'] version of the facts, a reasonable police officer would not have believed that the force used was necessary under the circumstances, the qualified immunity question has already been answered on the state of the record before us.

*Id.  Accord Mick v. Brewer*, 76 F.3d 1127, 1135 n.5 (10th Cir. 1996); *Quezada*, 944 F.2d at 718; *Street v. Parham*, 929 F.2d 537, 540-41 (10th Cir. 1991).  The Court notes, however, that the Supreme Court may call this view into doubt when it reviews the Ninth Circuit's decision in *Katz v. United States*, 194 F.3d 962 (9th Cir. 1999), *cert. granted*, 121 S. Ct. 480 (2000).  In *Katz* the Ninth Circuit collected cases demonstrating that the overwhelming majority of circuits (including the Tenth Circuit) agree that the qualified immunity test in Fourth Amendment excessive force cases is the same as the test on the merits.  *See id.* at 968, and cases cited therein.

Assuming that a separate qualified immunity analysis is required, the Court still concludes that Boyd is not entitled to qualified immunity at this stage of the proceedings.  Under the doctrine of qualified immunity, it is not necessary for a plaintiff to find a case with exact corresponding factual circumstances; defendants are required to make "reasonable applications of the prevailing law to their own circumstances."  *Currier v. Doran*, 2001 WL 202045, at *17

9

(quoting *Murrell v. School Dist. No. 1*, 186 F.3d 1238, 1251 (10th Cir.1999)).  As the Supreme Court has explained, "qualified immunity seeks to ensure that defendants 'reasonably can anticipate when their conduct may give rise to liability,' by attaching liability only if '[t]he contours of the rights [violated are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"  *United States v. Lanier*, 520 U.S. 259, 270 (1997) (citations omitted).  "This is not to say that an official action is protected by qualified immunity unless the very action in question has been held unlawful; but it is to say that in the light of preexisting law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (citations omitted).

The Court finds that it would have been apparent to a reasonable law enforcement official in April 1998 that it is unlawful to mace a handcuffed, obese, middle-aged woman who, while not physically resisting arrest, insisted on seeing the officer's picture identification before getting into a patrol car.  The *Graham* "objective reasonableness" test was well established by April 1998. Defendants point out that there was no legal authority holding that "the use of chemical agents to carry out an arrest is *per se* excessive or impermissible."  *Defendants' Memorandum in Support of the Motion for Summary Judgment*, at 10.  The question here, however, is not whether a police officer can ever use mace to effect an arrest, but whether Boyd's use of it against Martinez, under the facts she has set forth, was objectively unreasonable.  The case law authorizes the use of chemical agents by police only in the event that a citizen is physically resisting arrest and alternative, non-violent measures would be ineffective in gaining control over the citizen.  Here, the facts viewed in Martinez's favor show that she did not physically resist arrest and that there was a substantial possibility, based on her earlier cooperation, that Boyd could have placed her

inside the patrol car simply by showing her his picture identification. Qualified immunity is therefore not warranted.

## II.     CHARGING WITHOUT PROBABLE CAUSE

Martinez claims that Boyd violated her Fourth Amendment rights by charging her with the felony crime of altering a license, in violation of N.M. St. Ann. § 66-5-18(B). She argues that she should have instead been charged with misdemeanor possession of an altered license, in violation of N.M. St. Ann. § 66-5-18(A). The court interprets this claim (called "prosecution without probable cause" in Martinez's brief) as a claim for malicious prosecution. In this circuit, "the common law elements of malicious prosecution [are] the 'starting point' for the analysis of a § 1983 malicious prosecution claim." *Taylor v. Meacham*, 82 F.3d 1556, 1561 (10th Cir.1996). To establish a malicious prosecution claim under § 1983, Martinez must also prove a Fourth Amendment constitutional violation. *See id.* Under New Mexico law, lack of probable cause to initiate criminal proceedings is an "essential element" of the tort of malicious prosecution. *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir.1996); *see also Devaney v. Thriftway Marketing Corp.*, 953 P.2d 277, 285 (N.M. 1997) ("[T]o demonstrate the overt act required in an action for malicious abuse of process, a plaintiff may show the defendant filed an action against that plaintiff without probable cause."). Probable cause is defined as "the reasonable belief, founded on known facts established after a reasonable pre-filing investigation, that a claim can be established to the satisfaction of a court or jury." *Devaney*, 953 P.2d at 285 (citations omitted). *See also United States v. Gordon*, 173 F.3d 761, 766 (10th Cir.) (stating that probable cause is based on "a reasonably fair likelihood of criminal conduct," not "a positive showing of criminal conduct"), *cert. denied*, 528 U.S. 886 (1999).

11

Here, Boyd had probable cause to charge Martinez with the felony offense under § 66-5-18(B). Martinez's license had been clearly altered. Martinez had admitted to Boyd her awareness of the alterations. The license was in her possession. These facts, combined with Martinez's outstanding arrest warrant (giving her a reason to hide her identity), provided a sufficient factual basis for Boyd's decision to charge her with altering the license. That Martinez may have been in fact innocent of the charge, and guilty only of misdemeanor possession, is immaterial to her Fourth Amendment claim. So is Boyd's deposition testimony regarding his subjective thinking at the time he made the charge, which Martinez cites at length in her brief. *Plaintiff's Response to Motion for Summary Judgment*, at 8-9. The Supreme Court has stated that "the 'touchstone of the Fourth Amendment is reasonableness.' Reasonableness, in turn, is measured in *objective* terms by examining the totality of the circumstances." *Ohio v. Robinette*, 519 U.S. 33, 38 (1996) (citation omitted, emphasis added). Because there was an objectively reasonable basis for Boyd's decision to charge her with altering her license, Martinez's malicious prosecution claim fails.

Similarly, Martinez may not proceed with her malicious prosecution claim based on the charge of resisting an officer under § 30-22-1(D). By her own admission, Martinez resisted Boyd's orders to get out of her car and to get in the patrol car. While the New Mexico Court of Appeals has observed that "'[r]esisting, evading or obstructing an officer' *primarily* consists of physical acts of resistance," *State v. Wade*, 667 P.2d 459, 460 (N.M. Ct. App. 1983) (emphasis added), there is no authority for the proposition that an arrestee's passive resistence – *e.g.*, Martinez's refusal to obey Boyd's directions to exit her car, or to get in his police vehicle – does not violate the statute also. Existing law did not clearly establish that it was unlawful for Boyd to charge Martinez with this offense. Boyd is therefore entitled to summary judgment on this claim.

### III. ARREST WITHOUT PROBABLE CAUSE

In her response to the defendants' motion for summary judgment, Martinez writes that she makes "no claim for arrest without probable cause." Count III of her complaint, however, lists this as a claim for relief. Because, as Martinez concedes, the arrest warrant clearly gave Boyd authority to arrest her, summary judgment is proper on this count of her complaint.

### IV. BATTERY

Under the New Mexico Tort Claims Act, "[a] governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort except as waived. . . ." N.M. Stat. Ann § 41-4-4(A). Section 41-4-12 of the Act waives immunity for bodily injury resulting from battery or abuse of process "when caused by law enforcement officers while acting within the scope of their duties." Under New Mexico law, an actor commits the tort of battery if he wrongfully causes a harmful or offensive contact with another person. Again, viewing the facts in the light most favorable to Martinez for purposes of summary judgment, Boyd acted in an objectively unreasonable and wrongful manner when he applied mace to her face while she stood handcuffed outside his patrol car. *Cf. Quezada*, 944 F.2d at 719-20 & n.5 (holding that plaintiff may proceed with battery claim against New Mexico deputy sheriff whose "actions were negligent, and therefore wrongful"); *see also* Restatement (Second) of Torts § 132 (1965) ("The use of force against another for the purpose of effecting the arrest or recapture of the other, or of maintaining the actor's custody of him, is not privileged if the means employed are in excess of those which the actor reasonably believes to be necessary."). Martinez may therefore proceed with this state-law tort claim.

### V. MALICIOUS ABUSE OF PROCESS

13

In *Devaney v. Thriftway Marketing Corp.*, the New Mexico Supreme Court combined the torts of abuse of process and malicious prosecution into a single cause of action: malicious abuse of process. This cause of action has the following elements: "(1) the initiation of judicial proceedings against the plaintiff by the defendant; (2) an act by the defendant in the use of process other than such as would be proper in the regular prosecution of the claim; (3) a primary motive by the defendant in misusing the process to accomplish an illegitimate end; and (4) damages." 953 P.2d at 283. Martinez's claim for malicious abuse of process must be dismissed for the same reasons discussed in Section II, *supra*. Boyd had probable cause to charge Martinez with altering a license and resisting an officer. Martinez states no other facts that would support the second element of this state-law claim. Defendants are therefore entitled to summary judgment on the fifth count of Martinez's complaint.

## CONCLUSION

**IT IS THEREFORE ORDERED** that the defendants' motion for summary judgment is hereby **GRANTED IN PART** and **DENIED IN PART**. Counts 2, 3, and 5 of plaintiff

Martinez's complaint are hereby **DISMISSED WITH PREJUDICE**. Counts 1 and 4 remain properly before the Court.

_____
MARTHA VAZQUEZ
U. S. DISTRICT JUDGE

Attorney for Plaintiff
Joseph P. Kennedy

Attorneys for Defendants
CASTILLE LAW FIRM, LLC
Robert D. Castille
Tony F. Ortiz